**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALMA LUCERO SANDOVAL HERNANDEZ, et al., <br><br> Petitioners, <br><br> v. <br><br> KRISTI NOEM, et al. <br><br> Respondents. | Case No. ED CV 25-2563 FMO (AGRx) <br><br> **ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

On September 29, 2025, Josefina Ortega Zamudio, Osman Arturo Mendez de Leon, Alma Lucero Sandoval Hernandez, Narciso Modesto Cruz, Juan Jose Lopez Reyes, Anastasio Sanchez Javier, Luis Hernandez Meneses, Pedro Rodriguez Hernandez, and Sinforoso Salgado (collectively, "petitioners") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against the Secretary of the U.S. Department of Homeland Security ("DHS"), Kristi Noem; U.S. Attorney General, Pam Bondi; Acting Director of Immigration and Customs Enforcement ("ICE"), Todd Lyons; Acting Director of the Los Angeles Field Office of ICE, Ernesto Santacruz, Jr.; Warden of the Adelanto ICE Processing Center, Fereti Semaia; the Executive Office for Immigration Review ("EOIR"); DHS; and ICE (collectively, "respondents").  (See Dkt. 1, Petition for Writ of Habeas Corpus ("Petition")).  Petitioners seek a writ "requiring that they be released unless Respondents provide a bond hearing under § 1226(a) within seven days."  (Id. at ¶ 9).

Together with their Petition, petitioners filed an Ex Parte Application for a Temporary Restraining Order ("Application") that would require respondents to (1) release them from custody or provide them with an individualized bond hearing before an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of a temporary restraining order ("TRO"), and (2) enjoin respondents from relocating petitioners outside of the Central District of California pending final resolution of this case. (See Dkt. 4, Application at 1, 4). The court immediately issued an order setting a briefing schedule and cautioning respondents that sanctions could be imposed if any action were taken impairing the petitioners' ability to obtain complete relief. (See Dkt. 6, Court's Order of September 29, 2025). Respondents filed their Opposition to the Application on October 1, 2025, (Dkt. 9, Opp.), and petitioners filed a reply the next day. (Dkt. 10, Reply).

Now, having reviewed and considered all the briefing filed with respect to petitioners' Application, the court finds that oral argument is not necessary to resolve the Application, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**STATEMENT OF FACTS**

Petitioners are individuals currently held in the physical custody of respondents at the Adelanto ICE Processing Center and the Desert View Annex in Adelanto, California. (Dkt. 1, Petition at ¶ 1). ICE agents arrested petitioners between June 17, 2025, and August 20, 2025. (Id. at ¶¶ 16-24). DHS has placed the petitioners in removal proceedings pursuant to 8 U.S.C. § 1229a, and has charged each petitioner with being present in the United States without admission and therefore removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). (Id. at ¶ 3).

Prior to their arrests, each petitioner was physically present and residing within the United States. (Dkt. 1, Petition at ¶ 2). Following their detention, seven of the nine petitioners requested bond hearings before an IJ. (Id. at ¶¶16-21, 24). In each case, petitioners' requests were denied because (1) an IJ deemed petitioners to be applicants for admission, or (2) the IJ concluded that he or she lacked jurisdiction to entertain a bond request. (Id.). The final two petitioners, Ms.

Josefina Ortega Zamudio and Mr. Luis Hernandez Meneses, have been unable to obtain bond hearings at all "pursuant to 8 U.S.C. § 1226(a)." (See id. at ¶¶ 22-23).

In each case, the IJs' bond decisions (or refusal to provide a hearing at all) were based on a new DHS policy (the "policy") and the Matter of Jonathan Javier Yajure Hurtado ("Matter of Yajure Hurtado"), 29 I.&N. Dec. 216 (BIA 2025), a recent decision issued by the Board of Immigration Appeals ("BIA"). Pursuant to DHS's new policy, "all noncitizens who entered the United States without inspection shall now be deemed applicants for admission and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." (Dkt. 1, Petition at ¶ 43) (internal quotation marks omitted). In Matter of Yajure Hurtado, the BIA issued a decision that adopted this same position, i.e., an IJ no longer has no authority to consider bond requests for any person who entered the United States without admission. (See id. at ¶ 5).

Prior to implementation of the policy, people who entered the country without inspection were not "considered detained under § 1225 and [were] instead detained under § 1226(a)," and were therefore eligible for bond hearings unless their criminal history rendered them ineligible. (See Dkt. 1, Petition at ¶¶ 39-40). Based on these allegations, petitioners claim that their ongoing detention pursuant to respondents' policy violates: 8 U.S.C. § 1226(a); bond regulations issued by DHS and EOIR; the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2); and their Fifth Amendment due process rights. (See Dkt. 1, Petition at ¶¶ 99-112).

## **LEGAL STANDARD**

Rule 65 provides courts with the authority to issue preliminary injunctions and TROs. See Fed. R. Civ. P. 65(a) & (b). The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)). The substantive standard for deciding whether to issue a preliminary injunction or TRO is the same.

1    See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); NML
2    Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same).
3    "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may
4    only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" Six v. Newsom,
5    462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555
6    U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

7        A plaintiff seeking a preliminary injunction or TRO must establish that: (1) she is likely to
8    succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary
9    relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest.
10   Winter, 555 U.S. at 20, 129 S.Ct. at 374. Under the Ninth Circuit's "'sliding scale' approach[,] . .
11   . the elements of the preliminary injunction test are balanced, so that a stronger showing of one
12   element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d
13   1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might
14   offset a lesser showing of likelihood of success on the merits." Id.

15       With these standards in mind, the court now turns to the arguments raised by petitioners
16   in their Application.

## DISCUSSION

17       Under the circumstances, the court finds that petitioners are entitled to the requested TRO.
18   The court is not persuaded by the government's arguments that: (1) the court lacks jurisdiction
19   over this case; (2) petitioners have failed to demonstrate that they meet the requirements for a
20   TRO; or (3) petitioners are required to exhaust their administrative remedies before seeking this
21   court's intervention.[1]  (See Dkt. 9, Opp. at 5-14).  Instead, the court agrees with the numerous
22   federal courts – including many in this District – that have addressed the same legal issues

---

[1] Respondents note that they put forward here the same legal position they took in their "opposition to the ex parte TRO application filed in the Bautista case, 5:25-cv-01873-SSS-BFM, which the government filed on July 24, 2025 as Docket no. 8." (Dkt. 9, Opp. at 1).

presented here and granted TROs in nearly identical circumstances.[2]  See, e.g., Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS (BFM) (C.D. Cal. July 28, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Ceja Gonzalez v. Noem, No. 5:25-cv-2054-ODW-BFM (C.D. Cal. Aug. 13, 2025); Benitez v. Noem, No. 5:25-cv-2190-RGK-AS (C.D. Cal. Aug. 26, 2025); Zaragoza Mosqueda v. Noem, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); Arreola Armenta v. Noem, No. 5:25-cv-2416-JFW-SP (C.D. Cal. Sept. 16, 2025).  In particular, the court finds the reasoning set forth in Zaragoza Mosqueda to be persuasive.  Accordingly, for the reasons stated in that decision and the other decisions cited above, the court finds that:  (1) 8 U.S.C. § 1252(b)(9) and § 1252(g) do not present jurisdictional bars, see Jennings v. Rodriguez, 583 U.S. 281, 292-95, 138 S.Ct. 830, 839-42 (2018); (2) petitioners are likely to succeed on the merits of their claim that their ongoing detention mandated by 8 U.S.C. § 1225(b)(2) is unlawful because 8 U.S.C. § 1226(a) properly governs their detention; (3) petitioners are likely to suffer irreparable injury in the absence of a TRO because their detention constitutes a loss of liberty that is irreparable, see Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.") (internal quotation marks omitted); (4) the balance of equities and public interest weigh in favor of granting petitioners' request for a TRO because petitioners challenge a policy that is likely in violation of federal law, see Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]"); and (5) petitioners are not required to exhaust their administrative remedies.

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

---

[2] It appears that every petitioner in the other cases listed above was at least able to request a bond hearing by an IJ.  Here, two petitioners – Ms. Ortega Zamudio and Mr. Hernandez Meneses – were unable to even request a bond hearing in light of the BIA's decision in Matter of Yajure Hurtado, 29 I.&N. Dec. 216 (BIA 2025).  But for the purposes of analyzing the reasoning employed by the other courts, this factual distinction does not change the result.  Indeed, the fact that Ortega Zamudio and Hernandez Meneses cannot so much as request a bond hearing makes their showing of the likelihood of irreparable harm relief all the more compelling.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Respondents are enjoined from continuing to detain petitioners unless they are provided with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a) within seven calendar days of the filing date of this Order.

2. To preserve the court's jurisdiction, respondents are enjoined from transferring, relocating, or removing petitioners outside of the Central District of California pending final resolution of this case or further order of the court.

3. Given that the standard for granting an TRO and preliminary injunction are the same, Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7, the court shall construe plaintiffs' Application as an application for a preliminary injunction ("PI Application").

4. Respondents shall file their opposition to the PI Application no later than **October 13, 2025**. Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the PI Application.

5. Petitioners shall file their Reply in support of their PI Application no later than **October 17, 2025**.

6. The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the PI Application or take the PI Application under submission.

Dated this 9th day of October, 2025.

/s/
Fernando M. Olguin
United States District Judge